UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEVASTIANOV,<br><br>                              Plaintiff,<br><br>                    v.<br><br>SCOTT et al.,<br><br>                              Defendants. | |

24 Civ. 1075 (DEH)

**OPINION
AND ORDER**

DALE E. HO, United States District Judge:

On February 9, 2024, Igor Sevastianov ("Plaintiff" or "Mr. Sevastianov"), appearing *pro se*, filed this Complaint, challenging the application of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA") to him, resulting in an order of removal, recission of his lawful permanent resident ("LPR") status, and subsequent denial of an application for travel documents.[1]  Before the Court is Defendants' Motion to Dismiss.[2]  For the reasons stated below, the motion is **GRANTED**.

## BACKGROUND

Unless otherwise stated, the following facts are taken from the Complaint and are assumed to be true solely for the purposes of adjudicating Defendants' motion.[3]

Mr. Sevastianov entered the United States in 1992 and obtained LPR status in 1997.[4]  In 1998, Mr. Sevastianov was convicted of Bank Fraud in violation of 18 U.S.C § 1344 in the

---

[1] Compl., ECF No. 1, at 6-8.

[2] ECF No. 39.

[3] *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).

[4] Compl. at 6 ¶ 2.

Northern District of Ohio.[5]  In 2001, Mr. Sevastianov took a nine-day trip to Kazakhstan and was detained upon his arrival back in the United States.[6]  At this time, the "INS illegally confiscated [his] Green Card and American Travel Passport, allegedly based on the Illegal Immigration Reform and Immigration Act, . . . .  [He] was declared a 'new arrival illegal immigrant.'"[7]  In 2002, Mr. Sevastianov was issued a notice to appear ("NTA"), and it appears he was placed into removal proceedings.[8]  According to Mr. Sevastianov, he was ordered removed in 2006 (but documents submitted by the Government indicate that his order of removal was in fact issued in 2005).[9]  There is no indication that Mr. Sevastianov timely appealed his order of removal; he alleges that nothing happened with respect to his removal until 2009, when he was taken into ICE custody for approximately a month before he was ultimately released.[10]

After his release, Mr. Sevastianov began reporting to 26 Federal Plaza seeking help with his immigration status; he alleges that in 2013, he received some sort of communication from USCIS stating that his "case was approved."[11]  From the face of the Complaint, it appears nothing happened between 2013 and 2021, but in 2021 USCIS informed Mr. Sevastianov that he needed

---

[5] Notice to Appear, Frankenberg Decl., Ex. B, ECF No. 41-2, at 2; *see also* Pl. Opp'n, ECF No. 44, at 10-14.  While Mr. Sevastianov's arrest and conviction is not directly mentioned on the face of the Complaint, the Court may "review documents . . . incorporated into [the complaint] by reference and documents 'integral' to the plaintiff's allegations, even if not explicitly incorporated by reference."  *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, 746 F. Supp. 3d 135, 148 (S.D.N.Y. 2024).

[6] Compl. at 6 ¶ 2.

[7] *Id.*

[8] *Id.* at 6 ¶ 4; Notice to Appear.

[9] Compl. at 6 ¶ 5.  Defendants note that the order of removal came a year prior, in 2005. Frankenberg Decl. Ex. A, ECF No. 41-1, at 2.

[10] *Id.* at 6 ¶¶ 7-8.

[11] *Id.* at 7 ¶ 3.

to file an application to replace his permanent residency card.[12]  At some point thereafter, Mr. Sevastianov alleges he was given his green card in paper form and was told to wait for the official card to arrive in the mail.[13]

In 2022, Mr. Sevastianov submitted a Form I-131, seeking a reentry permit so he could visit his elderly mother in Kazakhstan.[14]  USCIS declined to issue him a travel document, and Mr. Sevastianov appealed.[15]  The decision was affirmed, explaining that Mr. Sevastianov was ineligible for a reentry permit "[b]ecause [he] has been ordered removed from the United States, [and so he is] no longer considered to be a lawful permanent resident."[16]

Throughout the Complaint, Mr. Sevastianov also makes various allegations of mistreatment by government officials.[17]

## LEGAL STANDARD[18]

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."[19]  "It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue."[20]

---

[12] *Id.* at 7 ¶ 4.

[13] *Id.* at 7 ¶ 5.

[14] *Id.* at 7 ¶ 6; *see also* Frankenberg Decl. Ex. C, ECF No. 41-3.

[15] *Id.* at 8 ¶ 1-2.

[16] Frankenberg Decl. Ex. A. at 2.

[17] *See e.g.*, Compl. at 6 ("I was literally tortured by the INS for the next 23 years.").

[18] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[19] *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002).

[20] *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990).

Where a defendant makes a factual attack on a court's jurisdiction to hear a plaintiff's claims, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts."[21]

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."[22] "Nonetheless, a pro se complaint must state a plausible claim for relief."[23] In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it."[24]

## DISCUSSION

Mr. Sevastianov appears to make four claims in his Complaint. First, Mr. Sevastianov challenges the application of the IIRAIRA to him.[25] Second, Mr. Sevastianov challenges his removal order.[26] Third, Mr. Sevastianov claims that USCIS unlawfully denied his application for a reentry permit.[27] Fourth, Mr. Sevastianov claims government officials engaged in tortious behavior.[28] As explained below, this Court lacks jurisdiction to hear any of these claims and thus Defendants' Motion to Dismiss is **GRANTED**.

---

[21] *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996), *aff'd*, 125 F.3d 844 (2d Cir. 1997).

[22] *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).

[23] *Id.*; *accord Walker v. Kosann*, No. 23 Civ. 4409, 2024 WL 922642, at *7 (S.D.N.Y. Feb. 16, 2024) ("[E]ven pro se plaintiffs' claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level."), *report and recommendation adopted*, 2024 WL 923314 (S.D.N.Y. Mar. 4, 2024).

[24] *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

[25] Compl. at 6 ¶ 1-3.

[26] *Id.* at 6 ¶ 4.

[27] *Id.* at 7 ¶ 6.

[28] *See generally id.*

## I.    Order of Removal

The Court begins with Mr. Sevastianov's second claim, his challenge to the order of removal.  8 U.S.C. § 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove a[ noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order."[29]  8 U.S.C. § 1252(a)(5) provides that the court of appeals "shall be the sole and exclusive means for judicial review" of all challenges to final orders of removal.[30]  "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process" before a court of appeals.[31]  That is, district courts are generally barred from reviewing either a direct or an indirect challenge to a final order of removal.[32]  Instead, a noncitizen may challenge a final order of removal only by filing a timely "petition for review" in the "appropriate court of appeals."[33]

Here, Mr. Sevastianov's allegations indicate that he did not timely appeal his order of removal in 2005, rendering it final.[34]  To the extent he requests relief from that final order, this Court lacks jurisdiction to hear such a claim.

---

[29] 8 U.S.C. § 1252(b)(9).

[30] 8 U.S.C. § 1252(a)(5).

[31] *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original); *see also Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221, 224 (S.D.N.Y. 2019) ("Sections 1252(a)(5) and 1252(b)(9) channel all challenges to . . . removal proceedings to the courts of appeals.").

[32] *See Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011).

[33] *See* 8 U.S.C. § 1252(a)-(b).

[34] *See generally* Compl.  Orders of removal become final "[u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time[.]"  8 C.F.R. § 1241.1(c).  Mr. Sevastianov had 30 days to appeal his order of removal, and he does not allege any

## II.    Application of the IIRAIRA to Mr. Sevastianov

Mr. Sevastianov's claim challenging the application of IIRAIRA to him is unclear, but liberally construed, he appears to raise an Administrative Procedure Act ("APA") claim, which authorizes judicial review of final agency actions.[35]  He insists that this claim is distinct from his challenges to his final order of removal and to the denial of his travel documents, and states that "24 years ago The Illegal Immigration Reform and Immigrant Responsibility Act was illegally applied to [him], on the basis of which [his] Green card, Reentry permit were illegally taken away, [and] deportation was initiated . . . ."[36]  Under his theory, however, if the final agency action here— that is, the confiscation of Mr. Sevastianov's green card and American passport through the application of IIRAIRA to him in 2001[37]—were to be deemed unlawful, then the resulting order of removal and denial of his reentry permit would also be improper.

The APA, however, "does not empower courts to set aside agency actions where other 'statutes preclude judicial review.'"[38]  That is the case here, because this claim—although styled as an APA claim—is, at bottom, an indirect challenge to Mr. Sevastianov's final order of removal, which this Court lacks jurisdiction to hear.

As noted above under 8 U.S.C. § 1252(a)(5), judicial review of a final order of removal is limited to the Court of Appeals.[39]  The term "judicial review" encompasses "both 'direct' and

---

facts that suggest he appealed that decision to the Bureau of Immigration Affairs ("BIA") within that timeframe.  *See* 8 C.F.R. § 1003.38.

[35] *See* 5 U.S.C. § 706(2).

[36] Pl. Opp'n at 2.

[37] Compl. at 6 ¶ 2.

[38] *Singh v. United States Citizenship & Immigr. Servs.*, 878 F.3d 441, 445 (2d Cir. 2017).

[39] 8 U.S.C. § 1252(a)(5) (emphasis added).

'indirect' challenges to removal orders."[40]  To determine whether a challenge is indirect, courts look to the substance of the relief sought, such that any claims that are "a necessary prerequisite to the plaintiff's ultimate goal of adjustment of status" to prevent removal are considered indirect challenges to a removal order.[41]  Accordingly, courts in this Circuit "have dismissed a wide variety of indirect challenges to removal orders for lack of jurisdiction."[42]

Here, the essence of Mr. Sevastianov's claim that IIRAIRA was unlawfully applied to him is, at bottom, a challenge to the resulting *consequences* of this purportedly unlawful application of the statute—that is, that his green card and reentry permit were "illegally" taken away and that removal was initiated.[43]  As such, Mr. Sevastianov raises an indirect challenge to his final order of removal.  His claim falls squarely within 8 U.S.C. § 1252(b)(9)'s language as a question concerning the "application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove a [noncitizen] from the United States," which can only be brought through "judicial review of a final order."[44]  And as explained above, this Court does not have jurisdiction to hear such a claim.

### III.    Denial of Reentry Permit

Mr. Sevastianov's challenge to the denial of his reentry permit is also brought under the APA.  As explained below, however, this Court lacks jurisdiction to hear his reentry permit challenge because the denial of his reentry permit is a non-reviewable discretionary agency decision.

---

[40] *Singh*, 878 F.3d at 445.

[41] *Id.* at 445-46.

[42] *Asylum Seeker Advoc. Project*, 409 F. Supp. 3d at 225 (collecting cases).

[43] Pl. Opp'n at 2.

[44] 8 U.S.C. § 1252(b)(9).

"[N]o court shall have jurisdiction to review . . . any . . . decision of the Attorney General or Secretary of Homeland Security the authority of which is specified . . . to be in the discretion of the Attorney General or Secretary of Homeland Security."[45]  To determine whether an agency action is within the discretion of the Attorney General or Secretary of Homeland Security, and thus shielded from judicial review, "the important question is whether the text of the subchapter in which the relevant provisions appear specifies that the decision is in the discretion of the Attorney General [or Secretary.]"[46]  Such text within a statute might include phrases such as, *inter alia*, "in the discretion of the Attorney General" or "to the satisfaction of the Attorney General."[47]

The statute that governs the issuance of reentry permits states that "the Attorney General may, *in his discretion*, issue the [reentry] permit . . . ."[48]  Accordingly, the decision to issue a reentry permit is discretionary, and the Court lacks jurisdiction to review it.

## IV.     Tort Claims

Defendants dedicate considerable space to discussing the Court's jurisdiction to hear potential tort claims raised by Mr. Sevastianov.[49]  The Court strains to see any cognizable tort claims within Mr. Sevastianov's Complaint, however, to the extent it does, the Court lacks jurisdiction to hear such claims.

Under the Federal Tort Claim Act ("FTCA"), plaintiffs may sue for claims arising out of torts committed by federal employees, so long as they "first file an administrative claim with the

---

[45] 8 U.S.C. § 1252(a)(2)(B)(ii).

[46] *Ruiz v. Mukasey*, 552 F.3d 269, 275 (2d Cir. 2009).

[47] *Id.*

[48] 8 U.S.C. § 1203(b) (emphasis added).

[49] Def. Mem. Law Supp. Mot. Dismiss at 9-12, ECF No. 40.

appropriate federal agency before suing for relief in federal court."[50]  This is a jurisdictional bar that is not subject to waiver.[51]  Mr. Sevastianov has not alleged any facts indicating he brought administrative claims for any alleged tortious acts committed by federal employees.  Therefore, any cognizable tort claims raised in the Complaint are not subject to judicial review.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.  The Clerk of Court is respectfully directed to terminate ECF No. 39 and to close this case.


SO ORDERED.

Dated:  March 31, 2026

New York, New York

_____

DALE E. HO
United States District Judge

---

[50] *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004).

[51] *See e.g.*, *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).